**LOMBARDI & LOMBARDI, P.A.**
1862 Oak Tree Road
Post Office Box 2065
Edison, New Jersey 08818
Tel. (732) 906-1500
　　　- and -
**WEITZ & LUXENBERG, P.C.**
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Tel. (856) 755-1115
Attorneys for Plaintiffs and the Class

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DOROTHY MERRIFIELD; MARIE A. BURKE; EVELYN FRICK; ADELE O. OBERLANDER; TARA KIZIUKIEWICZ; and LINDA HEISER, Individually and On Behalf of All Persons Similarly Situated, | : : : : : | CIVIL ACTION NO. |
| Plaintiffs, | : : | |
| vs. | : : : | |
| THE UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CENTERS FOR MEDICARE AND MEDICAID SERVICES; MICHAEL LEAVITT, in his capacity as Secretary of the United States Department of Health and Human Services; and LESLIE V. NORWALK, in her capacity as Acting Administrator for the Centers for Medicare and Medicaid Services, | : : : : : : : : : : | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendant(s) | : : | |

　　　Plaintiffs, Dorothy Merrifield; Marie A. Burke; Evelyn Frick; Adele O. Oberlander; Tara

Kiziukiewicz; and Linda Heiser, individually and on behalf of a all persons similarly situated, by

their undersigned counsel, and by way of Complaint against the Defendants herein, allege as

follows:

**THE PARTIES**

1.     Plaintiff Dorothy Merrifield is an individual residing at 94 Second Street, Township of Woodbridge, County of Middlesex, State of New Jersey.

2.     Plaintiff Marie A. Burke is an individual residing at 579 Florida Grove Road, Township of Hopelawn, County of Middlesex, State of New Jersey.

3.     Plaintiff Adele O. Oberlander is an individual residing at 193 Uxbridge Road, Township of Cherry Hill, County of Camden, State of New Jersey.

4.     Plaintiff Evelyn Frick is an individual residing at 79 Teaneck Road, Apt. #1, Village of Ridgefield Park, County of Bergen, State of New Jersey.

5.     Plaintiff Kelly Thatcher, Administratrix of the Estate of Lorraine Senesky, is an individual residing at 1370 Verga Avenue, Borough of Westville, County of Gloucester, State of New Jersey.

6.     Plaintiff Tara Kiziukiewicz is an individual residing at 1158 West 8th Street, Borough of South Plainfield, County of Middlesex, State of New Jersey.

7.     Plaintiff Linda Heiser is an individual residing at 80 Jefferson Avenue, Township of Pemberton, County of Burlington, State of New Jersey.

8.     Plaintiff Nancy French is an individual residing at 80 Jefferson Avenue, Township of Pemberton, County of Burlington, State of New Jersey.

9.     Defendants United States of America; United States Department of Health and Human Services; Centers for Medicare and Medicaid Services; Michael Leavitt, in his capacity as Secretary of the United States Department of Health and Human Services; and Leslie V. Norwalk, in her capacity as Acting Administrator for the Centers for Medicare and Medicaid Services, are entities and persons responsible for the administration of medical services benefits

-2-

through the federal Medicare program.  The defendants are hereinafter referred to collectively as "the U.S. Defendants."

## JURISDICTION AND VENUE

10.     Jurisdiction over this action by this Court is proper pursuant to 42 U.S.C. § 405(g), in that plaintiffs have exhausted their administrative remedies through the United States Department of Health and Human Services with respect to their claims against the United States of America and its departments and agencies, and/or the exhaustion of such administrative procedures as may be available would be futile.

11.     Jurisdiction over this action by this Court is further proper pursuant to 28 U.S.C. § 1331, in that plaintiffs have been deprived of a property interest in violation of the due process requirements of the Fifth and Fourteenth Amendments to the Constitution of the United States.

12.     Venue in this Court is proper pursuant to 42 U.S.C. § 405(g) and/or 28 U.S.C. § 1391(e) in that all named plaintiffs reside in the judicial district in which this action is brought.

## FACTUAL ALLEGATIONS

### Facts Common to All Plaintiffs

13.     All of the plaintiffs named herein suffered personal injuries as a result of accidents occurring in the State of New Jersey.

14.     Some portion of the medical care plaintiffs received in treatment of their respective injuries resulting from said accidents was paid for through the federal Medicare program.

15.     All of the plaintiffs named herein brought suit in the Superior Court of New Jersey or otherwise brought claims pursuant to New Jersey law to recover damages for their respective personal injuries.

-3-

16.     New Jersey statute, N.J.S.A. 2A:15-97, precluded plaintiffs from recovering in their civil actions, and relieved their respective tort defendants of liability for, any loss otherwise compensated by way of a collateral source of benefits. Had any of the plaintiffs' cases proceeded to trial, the trial court would have been statutorily obligated to mold any award of damages to deduct any amounts awarded in respect of medical expenses covered by collateral sources.

17.     Each of the plaintiffs named herein resolved her personal injury action by way of a settlement for a lump-sum payment.

18.     Defendants The United States of America, United States Department of Health and Human Services and Centers for Medicare and Medicaid Services may seek repayment of amounts expended on behalf of Medicare beneficiaries pursuant to the Medicare Secondary Payer Act, 42 U.S.C. 1395y(b)(2). The statute authorizes such reimbursement claims only "if it is demonstrated that such primary plan [*i.e.*, an insurance carrier or a self-insured tortfeasor] has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii).

19.     The U.S. Defendants produce, publish, distribute and otherwise make available the Medicare Secondary Payer ("MSP") Manual, intending that those dealing with the government on Medicare secondary payer issues rely on it as the official statement of the government's position and as a guide to compliance with its administrative processes. In particular :

-4-

a.   Section 50.4.1 of the MSP Manual initially notes that "Medicare's [reimbursement] claim comes into existence . . . *when payment for medical expenses* that Medicare conditionally paid for *has been made by a third party payer*."

b.   Section 50.4.4 of the MSP Manual specifically states, in pertinent part, that "Medicare recognizes allocations of liability payments to nonmedical losses . . . when payment is based on a court order on the merits of the case.  If the court or other adjudicator of the merits specifically designates amounts that are payment for pain and suffering or other amounts not related to medical services, Medicare will accept the Court's designation.  *Medicare does not seek recovery from portions of court awards that are designated as payment for losses other than medical services.*"

c.   Section 50.5.4.1.1 of the MSP Manual instructs that "When a liability insurance payment is made pursuant to a wrongful death action, *Medicare may recover from the payment only if the State statute permits recovery of these medical expenses*. . . . [W]hen State law limits the amount of the past medical expenses that may be recovered from the tort feasor and responsible insurer, Medicare may recover only up to that amount . . . .  If a [State] wrongful death statute does not permit recovering medical damages, Medicare has no claim to the wrongful death benefits."

Thus, in the case of both personal injury and wrongful death damages, Medicare's own published policies and procedures state that it expressly submits to state law adjudication in establishing a condition precedent to any Medicare reimbursement claim.

20.   In all civil actions brought pursuant to New Jersey law, a third party's "responsibility to make payment" with respect to any item or service otherwise paid for through a collateral source is governed by N.J.S.A. 2A:15-97.  The statute and its interpretive case law

-5-

act as an "adjudicator of the merits" as to the recovery of damages, determining that no portion

of any personal injury recovery is to include reimbursement for medical services paid for by a

collateral source. As a result, past and future medical bills paid by a collateral source of benefits

are not an issue in settlement negotiations and are not part of any recovery that may be obtained

from tort defendants. By virtue of the New Jersey collateral source statute, all recoveries in civil

actions necessarily relate only to non-economic losses (*e.g.,* bodily injury, disability, pain and

suffering, disfigurement, loss of consortium, etc.) and uninsured/uncompensated economic

losses (*e.g.,* lost wages).

### Facts as to Plaintiff Dorothy Merrifield

21.     Plaintiff Dorothy Merrifield was injured on or about August 31, 2001 in an

escalator accident at the Menlo Park Mall, in the Township of Edison, County of Middlesex,

State of New Jersey, and some portion of the medical care she received in treatment of her

injuries was paid for through the federal Medicare program.

22.     Ms. Merrifield's personal injury lawsuit was ultimately resolved on or about

October 28, 2003 by way of a settlement for a lump-sum payment.

23.     Following settlement of Ms. Merrifield's personal injury claim, and

notwithstanding the statutory limitations imposed on her recovery by New Jersey law, the U.S.

Defendants named herein asserted a claim against plaintiff's tort recovery for reimbursement of

her medical expenses paid through the Medicare program, in the amount of $1,186.63.

24.     Relying on the express language of federal and state statutes, their interpretive

case law, as well as the government's own published policies and procedures, Ms. Merrifield has

consistently rejected the U.S. Defendants' demands for payment, and has notified the U.S.

Defendants of her objections.

25.     The U.S. Defendants, their agents and servants have engaged in a campaign of sending menacing letters demanding reimbursement and threatening collection action, various legal actions, and/or the suspension and/or termination of government benefits on which Ms. Merrifield depends, including Social Security benefits.

26.     Ms. Merrifield has repeatedly requested and been refused access to administrative processes through the Centers for Medicare and Medicaid Services in seeking administrative review of and relief from the Medicare reimbursement claim.

27.     On numerous occasions in 2004 and 2005, Ms. Merrifield requested administrative review of Medicare's demand for $1,186.63 out of her tort recovery and an opportunity to appeal any adverse determination with respect thereto. However, the Medicare contractor assigned the matter instead served Ms. Merrifield with a notice of intent to refer her matter to the Department of Treasury for debt collection, including seeking an offset against her other federal benefits.

28.     Despite Ms. Merrifield's further requests for administrative review and relief, her matter has apparently been disposed of through the Department of Treasury by way of referral to private counsel for debt collection.

### Facts as to Plaintiff Marie A. Burke

29.     Plaintiff Marie A. Burke was injured on or about April 13, 2001 in a fall-down accident at the Park Place/Hilton Casino Resort in the City of Atlantic City, County of Atlantic, State of New Jersey, and some portion of the medical care she received in treatment of her injuries was paid for through the federal Medicare program.

-7-

30. Ms. Burke's personal injury lawsuit was ultimately resolved on or about February 3, 2004, at the time the matter was assigned out for trial, by way of a settlement for a lump-sum payment.

31. Following settlement of Ms. Burke's personal injury claim, and notwithstanding the statutory limitations imposed on her recovery by New Jersey law, the U.S. Defendants named herein asserted a claim against plaintiff's tort recovery for reimbursement of her medical expenses paid through the Medicare program, in the amount of $3,596.11.

32. The U.S. Defendants, their agents and servants engaged in a campaign of sending menacing letters demanding reimbursement and threatening collection action, various legal actions, and/or the suspension and/or termination of government benefits on which Ms. Burke depends, including Social Security benefits.

33. Coerced by the U.S. Defendants' threats of federal governmental action against her, Ms. Burke paid the Medicare reimbursement claim under protest in or about June of 2004. Shortly thereafter, the U.S. Defendants demanded additional payment from Ms. Burke for interest purportedly accruing on their claim.

34. Ms. Burke sought administrative review and refund of her payment from the U.S. Defendants with respect to their Medicare reimbursement claim. During the ensuing two years of administrative review, the Medicare contractors conducting the review reaffirmed the Medicare reimbursement claim.

35. Ms. Burke appealed the contractors' determinations and sought review by an Administrative Law Judge, appearing through counsel in a hearing before the Hon. Charles D. Bennett, Jr., A.L.J., on or about August 25, 2006.

-8-

36.    On or about August 30, 2006, Judge Bennett issued a fully favorable decision for Ms. Burke, finding that under federal statute and case law, reimbursement of Medicare-covered expenses had been improperly demanded by the government. The judge concluded that the U.S. Defendants named herein, and in particular the Centers for Medicare and Medicaid Services, must refund to Ms. Burke the sum of $ 3,608.82 that had been paid under protest.

37.    The Centers for Medicare and Medicaid Services was provided with Judge Bennett's decision. No application for reconsideration was filed nor was any appeal taken. The time in which to file an appeal has expired, and further administrative action is therefore foreclosed.

38.    To the date of filing of this action, Ms. Burke has received no payment from the U.S. Defendants.

### Facts as to Plaintiff Evelyn Frick

39.    Plaintiff Evelyn Frick was injured on or about September 1, 2000 when she fell down a stairway at the Cameo Restaurant in the City of Garfield, County of Bergen, State of New Jersey, and some portion of the medical care she received in treatment of her injuries was paid for through the federal Medicare program.

40.    Ms. Frick's personal injury lawsuit was ultimately resolved on or about June 29, 2004 by way of a settlement for a lump-sum payment.

41.    Following settlement of Ms. Frick's personal injury claim, and notwithstanding the statutory limitations imposed on her recovery by New Jersey law, the U.S. Defendants named herein asserted a claim against plaintiff's tort recovery for reimbursement of her medical expenses paid through the Medicare program, in the amount of $19,809.04.

-9-

42.     On plaintiff's motion for an adjudication of the allocation of settlement proceeds, the Honorable Daniel P. Mecca, Superior Court, Bergen County, New Jersey, signed an Order on or about September 24, 2004 determining that no portion of the settlement proceeds in Ms. Frick's personal injury action was for compensation of medical expenses paid by way of collateral source benefits. The executed Order was served upon the U.S. Defendants. No motion for reconsideration or vacation of the ruling was made, and no appeal was taken.

43.     Despite the formal adjudication as to the nature of Ms. Frick's tort recovery, the U.S. Defendants continued to assert a claim against plaintiff's tort recovery proceeds for reimbursement of her medical expenses paid through the Medicare program.

44.     The U.S. Defendants, their agents and servants engaged in a campaign of sending menacing letters demanding reimbursement and threatening collection action, various legal actions, and/or the suspension and/or termination of government benefits on which Ms. Frick depends, including Social Security benefits.

45.     On or about May 16, 2006, Ms. Frick sought administrative review of the U.S. Defendants' claim by way of a formal request for waiver, compromise and/or termination of Medicare Secondary Payer recovery efforts, addressed to both the Centers for Medicare and Medicaid Services and its subrogation claims contractor.

46.     Receiving no response whatsoever for more than three months, by letter dated September 5, 2006 plaintiff again submitted her formal request for waiver, compromise and/or termination of Medicare Secondary Payer recovery efforts, addressed to both the Centers for Medicare and Medicaid Services and its subrogation claims contractor.

47.     To the date of filing of this action, plaintiff has not received any hearing, determination, or other disposition of her request for review.

-10-

## Facts as to Plaintiff Adele O. Oberlander

48.    Plaintiff Adele O. Oberlander was injured on or about December 10, 2005 when she fell on an accumulation of ice at The Weston Club apartment complex in the Township of Evesham, County of Burlington, State of New Jersey, and some portion of the medical care she received in treatment of her injuries was paid for through the federal Medicare program.

49.    Ms. Oberlander's personal injury lawsuit was ultimately resolved on or about December 11, 2006 by way of a settlement for a lump-sum payment.

50.    Following settlement of Ms. Oberlander's personal injury claim, and notwithstanding the statutory limitations imposed on her recovery by New Jersey law, the U.S. Defendants named herein asserted a claim against plaintiff's tort recovery for reimbursement of her medical expenses paid through the Medicare program, in the amount of $28,712.94.

51.    Coerced by the U.S. Defendants' threats of federal governmental action against her, and unwilling to risk interruption of her federal benefits, Ms. Oberlander paid the Medicare reimbursement claim under protest on or about February 6, 2007.

## Facts as to Plaintiff Tara Kiziukiewicz

52.    Plaintiff Tara Kiziukiewicz was injured on or about June 15, 2000 in a motor vehicle accident on Parsonage Road near the intersection of Route 27 in the Township of Edison, County of Middlesex, State of New Jersey, and some portion of the medical care she received in treatment of her injuries was paid for through the federal Medicare program.

53.    Ms. Kiziukiewicz's personal injury lawsuit was ultimately resolved on or about June 15, 2002 by way of a settlement for a lump-sum payment.

54.    Following settlement of Ms. Kiziukiewicz's personal injury claim, and notwithstanding the statutory limitations imposed on her recovery by New Jersey law, the U.S.

-11-

Defendants named herein asserted a claim against plaintiff's tort recovery for reimbursement of her medical expenses paid through the Medicare program, in the amount of $2,464.63.

55.     On or about December 4, 2002, Ms. Kiziukiewicz paid the U.S. Defendants' their claim of $2,464.63.

### Facts as to Plaintiff Linda Heiser

56.     Plaintiff Linda Heiser was injured on or about December 31, 2004 in a motor vehicle accident in the Township of Mount Holly, County of Burlington, State of New Jersey. After exhausting her auto insurance policy's $250,000 Personal Injury Protection (PIP) benefits, additional costs of the medical care she received in treatment of her injuries were paid for through the federal Medicare program.

57.     Ms. Heiser instituted a claim for damages with the at-fault motorist's insurance carrier, which was ultimately resolved on or about July 27, 2005 by way of a settlement for a lump-sum payment.

58.     Following settlement of Ms. Heiser's personal injury claim, and notwithstanding the statutory limitations imposed on her recovery by New Jersey law, the U.S. Defendants named herein asserted a claim against plaintiff's tort recovery for reimbursement of her medical expenses paid through the Medicare program, in the amount of $16,046.61.

59.     The U.S. Defendants, their agents and servants engaged in a campaign of sending menacing letters demanding reimbursement and threatening collection action, various legal actions, and/or the suspension and/or termination of government benefits on which Ms. Heiser depends, including Social Security benefits.

-12-

60.     Ms. Heiser sought administrative review of the U.S. Defendants' claim for
reimbursement of Medicare-covered expenses, and the Medicare contractors conducting the
review reaffirmed the Medicare reimbursement claim.

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs bring this action on their own behalf and on behalf of all others
similarly situated pursuant to F.R.C.P. Rule 23, seeking certification of a class consisting of all
individuals against whom the U.S. Defendants have asserted a claim for reimbursement of
Medicare-covered expenses out of tort recoveries obtained in civil actions brought pursuant to
New Jersey law.

62.     **Numerosity (F.R.C.P. 23(a)(1))**:  The members of the class are so numerous that
joinder of all members is impracticable, if not impossible, except by means of a class action.  On
information and belief, there are tens of thousands of members of the class.  Class members may
be informed of the pendency of this action by published and broadcast notice.

63.     **Common Questions of Law and Fact (F.R.C.P. 23(a)(2))**:  There are important
questions of law and fact common to all members of the class.  These common legal and factual
questions include, but are not limited to:

a.      Whether medical expenses paid for by the federal Medicare program were
precluded from recovery by plaintiffs and the class as an element of damages in their
personal injury actions brought pursuant to New Jersey law;

b.      Whether the U.S. Defendants violated federal statute by improperly
asserting claims for reimbursement out of tort recoveries obtained by plaintiffs and the
class in actions governed by New Jersey law;

-13-

c.      Whether the U.S. Defendants violated their own published policies and

procedures in asserting claims for reimbursement out of tort recoveries obtained by

plaintiffs and the class in actions governed by New Jersey law;

d.      Whether the U.S. Defendants violated constitutional guarantees of due

process in asserting claims for reimbursement out of the tort recoveries obtained by

plaintiffs and the class in actions governed by New Jersey law;

e.      Whether the Medicare Secondary Payer Act, 42 U.S.C. 1395y(b)(2) *et seq.*

preempts New Jersey law, and in particular N.J.S.A. 2A:15-97, with respect to tort

recoveries obtained by plaintiffs and the class;

f.      Whether the U.S. Defendants have been unjustly enriched to the detriment

of plaintiffs and the class;

g.      Whether plaintiffs and the class are entitled to declaratory judgment

and/or injunctive relief;

h.      Whether plaintiffs and the class are entitled to restitution and

compensatory damages, and if so, the nature and amount of such damages.

64.     **Typicality of Claims (F.R.C.P. 23(a)(3))**: Plaintiffs' claims are typical of the

claims of the members of the class they seek to represent, all of whom recovered compensation

in tort for personal injuries and have been subjected to claims for reimbursement by the U.S.

Defendants.

65.     **Adequacy of Representation (F.R.C.P. 23 (a)(4))**: Plaintiffs and their counsel

will fairly and adequately represent and protect the interests of the class. Plaintiffs have no

interests antagonistic to those of the class. Plaintiffs have retained counsel who are competent

and experienced in class action litigation and knowledgeable concerning the issues raised in this

-14-

action. Plaintiffs and their counsel intend to prosecute this action vigorously and to conclusion for the benefit of the class.

66. **Class Certification – Risk of Inconsistent/Dispositive Adjudications (F.R.C.P. 23(b)(1))**: The claims and question raised in this action may be appropriately certified as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the U.S. Defendants. Moreover, because of the legal questions raised herein, adjudications with respect to individual members of the class would, as practical matter, be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

67. **Class Certification – Injunctive/Declaratory Relief (F.R.C.P. 23(b)(2))**: The claims and questions raised in this action may be appropriately certified as a class action in that the U.S. Defendants have acted, or refused to act, on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole. This action seeks, *inter alia*, declaratory judgment and injunctive relief.

68. **Class Certification – Predominance (F.R.C.P. 23(b)(3))**: As alleged herein, this action raises numerous questions of law and fact common to all members of the class, which predominate over any questions which may affect only individual members, and is therefore appropriate for certification as a class action. In particular, the fundamental issues of statutory construction, federal preemption and constitutional due process requirements will not require any inquiry into the facts and circumstances of individual class members.

-15-

69. **Class Certification – Superiority (F.R.C.P. 23(b)(3))**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and in particular superior to individualized litigation. This matter seeks, *inter alia*, declaratory judgment and injunctive relief with respect to identical conduct of the U.S. Defendants toward all members of the class. Furthermore, individual litigation of the identical claims of all members of the class would be impractical and economically infeasible, especially since the quantum of damages suffered by any individual class member may be relatively small, making it cost-prohibitive for class members individually to seek redress for the wrongful conduct alleged. Even if all members of the class could afford individual litigation, the court system cannot. It would be unduly burdensome on the court to handle litigation of tens of thousands of claims presenting the identical factual and legal issues, and would unreasonably increase the delay and expense to all parties and the court. By contrast, class treatment as described herein presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale and comprehensive supervision by a single court. Plaintiffs envision no exceptional difficulties in the management of this action as a class action.

## FIRST CAUSE OF ACTION
### (For Declaratory Judgment and Injunctive Relief)

70. Plaintiffs incorporate herein by reference all other paragraphs of this Complaint, repeating each allegation as though set forth at length.

71. The United States of America, it departments and agencies, including the U.S. Defendants named herein, have no claim to recover the value of medical services provided or paid for by the Medicare program except to the extent that such a right is expressly created by a federal statute.

-16-

72.     Pursuant to the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2), the
United States of America, its department and agencies, including the U.S. Defendants named
herein, are authorized to recover the amount paid by Medicare as "conditional payments" when
it is a "secondary payer." However, 42 U.S.C. §1395y(b)(2)(B)(ii) provides that reimbursement
of the appropriate Medicare Trust Fund for payments made under the program is required only if
it is demonstrated that a "primary plan" (i.e., an insurance carrier or a self-insured tortfeasor) has
or had a responsibility to make payment with respect to the Medicare-covered item(s) or
service(s) provided to the beneficiary.  Medicare's statutory right to reimbursement is thus
strictly contingent on a beneficiary's right to recover medical expenses in a third-party liability,
workers compensation or "no-fault" insurance claim.

73.     The limited nature of Medicare's right to reimbursement is reflected and
reiterated in the long-standing policies and procedures of defendant United States Department of
Health and Human Services, set out in the Medicare Secondary Payer ("MSP") Manual.  For
example, section 50.4.4 of the MSP Manual expressly provides that "[i]f the court or other
adjudicator of the merits specifically designates amounts that are payment for pain and suffering
or other amounts not related to medical services, Medicare will accept the court's designation.
Medicare does not seek recovery from portions of court awards that are designated as payment
for losses other than medical services."  Similarly, section 50.5.4.1.1 of the MSP Manual
instructs that "[i]f a [state] wrongful death statute does not permit recovering medical damages,
Medicare has no claim to the wrongful death benefits."

74.     In a tort action brought under New Jersey law, the state's collateral source statute,
N.J.S.A. 2A:15-97, provides that no defendant (or his insurer) maybe held responsible to make

-17-

any payment with respect to any loss otherwise compensated through a collateral source (other than workers compensation or life insurance benefits).

75.     Because the plaintiffs and the class herein were precluded by state law from recovering in tort any medical expenses paid for by Medicare, no "primary plan" could have had any responsibility to make payment with respect to any Medicare-covered items or services. Accordingly, the statutorily specified conditions giving rise to any Medicare right of reimbursement could not have been met, and the U.S. Defendants named herein have no legal authority to have made any claim against the tort recoveries of plaintiffs and the class for Medicare's reimbursement.

76.     Specifically, as a result of the U.S. Defendants' own administrative review process in the matter of plaintiff Marie Burke, the federal agencies' Administrative Law Judge has issued a final ruling concluding that defendants have no right to reimbursement of Medicare-covered expenses out of a personal injury recovery, expressly relying on the language of the Medicare Secondary Payer Act, the Code of Federal Regulations, and relevant interpretive case law.  Nevertheless, the U.S. Defendants continue to assert reimbursement claims against plaintiffs and the class, and in the individual matter of plaintiff Marie Burke have failed and refused to pay the restitution ordered.

77.     By reason of the foregoing, defendants the United States of America; United States Department of Health and Human Services; Centers for Medicare and Medicaid Services; Michael Leavitt, in his capacity as Secretary of the United States Department of Health and Human Services; and Leslie V. Norwalk, in her capacity as Acting Administrator for the Centers for Medicare and Medicaid Services have violated the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2), by wrongfully demanding reimbursement of Medicare benefits from the proceeds

-18-

of recoveries obtained by plaintiffs and the class from third-party tortfeasors in their actions for personal injuries.

## SECOND CAUSE OF ACTION
### (For Violation of Due Process Rights Under the Fifth and Fourteenth Amendments to the Constitution)

78.     Plaintiffs incorporate herein by reference all other paragraphs of this Complaint, repeating each allegation as though set forth at length.

79.     Plaintiffs and the class are afforded constitutional rights to procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution when faced with deprivation of a property interest by the government.

80.     At all times relevant hereto, plaintiffs and the class have a property interest in the proceeds of their personal injury settlements.

81.     The U.S. Defendants exceeded their statutory authority under the Medicare Secondary Payer Act by demanding reimbursement from plaintiffs and the class where plaintiffs and the class themselves were legally precluded from recovering any Medicare-covered expenses in their underlying tort actions, and where there is consequently no third-party liability for those losses.

82.     The U.S. Defendants exceeded their statutory authority under the Medicare Secondary Payer Act by demanding reimbursement from plaintiffs and the class where plaintiffs and the class themselves could not have recovered Medicare-covered expenses in their underlying tort actions in any event due to the tort defendants' limited insurance coverage/assets, disputed issues of liability, and/or other reasons.

83.     The U.S. Defendants violated the Medicare Secondary Payer Act and their own published Medicare policies and procedures by failing and refusing to honor duly entered orders

of the trial courts adjudicating the allocation of settlement proceeds in the personal injury actions brought by plaintiffs and the class, and by demanding reimbursement despite entry of such orders.

84.     The U.S. Defendants failed and refused to follow the law governing Medicare's reimbursement rights by demanding payment from plaintiffs and the class without meeting the explicit statutory conditions required for reimbursement – specifically, demonstrating some third-party liability for Medicare-covered expenses.

85.     In light of the express statutory conditions for reimbursement set out in the Medicare Secondary Payer Act, the U.S. Defendants had no authority whatsoever to demand reimbursement of medical expenses out of third-party tort recoveries obtained by plaintiffs and the class; absent even a colorable showing of such authority, plaintiffs and the class were wrongly subjected to Medicare's administrative procedures for claims resolution.

86.     The U.S. Defendants failed and refused to follow the statutory and regulatory frameworks established for Medicare Secondary Payer claims resolution and deprived plaintiffs and the class of a property interest without due process of law.

87.     The U.S. Defendants' acts and omissions in depriving plaintiffs and the class of their property interests in their respective tort recoveries is collateral and wholly unrelated to any substantive claim of entitlement regarding either eligibility for or amount of benefits that may have been due to plaintiffs and the class under the federal Medicare program.

88.     The U.S. Defendants have demonstrated no concern for correcting their errors in exceeding their statutory authority; failing and refusing to follow the law governing Medicare's reimbursement rights; failing and refusing to adhere to the statutory and regulatory frameworks for claims resolution; failing and refusing to abide by their own published policies and

procedures, including but not limited to honoring determinations of state trial courts; subjecting Medicare beneficiaries to administrative procedures without legitimate grounds or colorable authority; and otherwise wrongfully and improperly asserting claims for reimbursement of Medicare-covered expenses, all in violation of the due process rights of plaintiffs and the class.

## THIRD CAUSE OF ACTION
### (For Unjust Enrichment)

89.     Plaintiffs incorporate herein by reference all other paragraphs of this Complaint, repeating each allegation as though set forth at length.

90.     The U.S. Defendants have wrongfully claimed and collected monies which they were not entitled to receive from the personal injury recoveries of plaintiffs and the class, in violation of statute, regulation, interpretive law, the government's own express policies and procedures, and the constitutional rights of plaintiffs and the class.

91.     The aforesaid payments to the U.S. Defendants have deprived plaintiffs and the class of amounts that were intended as compensation for their bodily injury, disability, pain and suffering, other non-economic losses and otherwise uncompensated economic losses, which amounts were obtained through their personal injury actions.

92.     The wrongful collection of monies from plaintiffs and the class described herein has unjustly enriched and benefitted the U.S. Defendants at the expense and to the detriment of plaintiffs and the class.

93.     Having collected monies from plaintiffs and the class in violation of statue, regulation, interpretive law, the government's own express policies and procedures, and the constitutional rights of plaintiffs and the class, it is inequitable for the U.S. Defendant to retain those sums received as a result of improper Medicare reimbursement claims.

-21-

94.     The U.S. Defendants' unjust enrichment described herein entitles plaintiffs and the class to damages, including but not limited to restitution and disgorgement of the U.S. Defendant's unlawful gains.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiffs Dorothy Merrifield; Marie A. Burke; Evelyn Frick; Adele O. Oberlander; Tara Kiziukiewicz; and Linda Heiser, Individually and On Behalf of All Persons Similarly Situated, pray that this Court enter judgment in their favor and against the Defendants as follows:

(a)     Certifying a class as set forth herein and designating the plaintiffs as representatives thereof;

(b)     Declaring the conduct of the U.S. Defendants to be in violation of the law as set forth herein;

(c)     Enjoining the U.S. Defendants from taking any action to demand or collect reimbursement of Medicare benefits from any recovery obtained from third-party tortfeasors in actions for personal injuries brought under New Jersey law;

(d)     Adjudicating the rights and liabilities of the parties and declaring void and unenforceable all claims asserted by the U.S. Defendants against proceeds received by plaintiffs and the class from any third-party tortfeasors by way of settlement or judgment on their personal injury claims;

(e)     Awarding the plaintiffs and members of the class compensatory damages for the injuries they have sustained as a result of the U.S. Defendants' unlawful conduct;

(f)     Awarding the plaintiffs and other members of the class immediate restitution;

-22-

(g)     Awarding the plaintiffs and other members of the class counsel fees, expert fees,

pre- and post-judgment interest, and cost of investigation and suit; and

(h)     Awarding such further legal and equitable relief as the Court deems proper and

just.

## JURY DEMAND

The plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: March 1, 2007           By:

Franklin P. Solomon (FS-8470)
**WEITZ & LUXENBERG, P.C.**
210 Lake Drive, East Suite 101
Cherry Hill, New Jersey 08002
Tel. (856)755-1115

and

Paul R. Garelick
**LOMBARDI & LOMBARDI, P.A.**
1862 Oak Tree Road
Post Office Box 2065
Edison, New Jersey 08818
Tel. (732) 906-1500

Attorneys for Plaintiffs

-23-