IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

DOROTHY MERRIFIELD, et al.,

               Plaintiffs,

        v.

UNITED STATES of AMERICA, et al.,

             Defendants.

---

Civil No. 07-987 (JBS)

**OPINION**

**APPEARANCES:**

Franklin P. Solomon, Esq.
WEITZ & LUXENBERG, PC
210 Lake Drive East
Suite 101
Cherry Hill, NJ 08002

    - and -

Paul Garelick, Esq.
LOMBARDI & LOMBARDI
1862 Oak Tree Road
P.O. Box 2065
Edison, NJ 08818-2065
    Attorneys for Plaintiffs

Siobhan Kelly Madison, Esq.
UNITED STATES DEPARTMENT OF JUSTICE
615 Chestnut Street
Philadelphia, PA 19106

    - and -

Hannah Yael Shay Chanoine, Esq.
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION
FEDERAL PROGRAMS BRANCH
20 Massachusetts Ave NW
Washington, DC 20530
    Attorneys for Defendants

**Simandle, District Judge:**

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . 3

II.   BACKGROUND . . . . . . . . . . . . . . . . . . . . 3

      A.  Medicare as Secondary Payer  . . . . . . . . . 3

      B.  Plaintiffs' Experiences and Claims . . . . . . 7

      C.  Availability of Administrative Review  . . . . . 15

III.  PARTIES' ARGUMENTS . . . . . . . . . . . . . . . . 20

      A.  Government Defendants  . . . . . . . . . . . . 20

      B.  Plaintiffs' Arguments  . . . . . . . . . . . . 22

IV.   ANALYSIS . . . . . . . . . . . . . . . . . . . . . 23

      A.  Standard for Motion to Dismiss for Lack of Subject
          Matter Jurisdiction  . . . . . . . . . . . . . 23

      B.  Federal Question Jurisdiction  . . . . . . . . 25

      C.  Section 405(g) Jurisdiction  . . . . . . . . . 34

      D.  Whether Burke's & Frick's Claims are Moot  . . . . . 43

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . 44

## I.    INTRODUCTION

This matter comes before the Court on the motion of Defendants, the United States of America, the Department of Health and Human Services ("HHS"), the Centers for Medicare and Medicaid Services ("CMS"), the Secretary of HHS and the Acting Administrator of CMS, to dismiss Plaintiffs' class complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.  For the reasons explained below, the Court shall grant the motion to dismiss and require Plaintiffs to channel their claims through CMS before seeking relief in district court.

## II.  BACKGROUND

### A.    Medicare as Secondary Payer

Plaintiffs are New Jersey residents for whom Medicare paid medical expenses after they suffered personal injuries in accidents.  (Compl. ¶¶ 1-2.)  After bringing suits in New Jersey Superior Court against their alleged tortfeasors, all Plaintiffs settled for lump sums.  Under New Jersey law, tortfeasors are not liable for the costs of any medical expenses that Medicare has already paid.  N.J. Stat. Ann. § 2A:15-97.  Thus, Plaintiffs allege, their settlements contained no remuneration for the costs Medicare incurred in paying for their treatment.  (Compl. ¶ 16.)

3

Nevertheless, pursuant to a "secondary payer" provision in the Medicare Act, see 42 U.S.C. § 1395y(b)(2)(B), CMS sought reimbursement from Plaintiffs for the money it expended on Plaintiffs' medical expenses under Medicare.  The relevant portion of the Medicare as secondary payer ("MSP") statute provides:

> (2) Medicare secondary payer
>  (A) In general
>     Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that--
>     (i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or
>     (ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.
>
>     In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.
>
> (B) Repayment required

4

(i) Authority to make conditional payment

The Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.

(ii) Primary plans

A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means. If reimbursement is not made to the appropriate Trust Fund before the expiration of the 60-day period that begins on the date notice of, or information related to, a primary plan's responsibility for such payment or other information is received, the Secretary may charge interest (beginning with the date on which the notice or other information is received) on the amount of the reimbursement until reimbursement is made (at a rate determined by the Secretary in accordance with regulations of the Secretary of the Treasury applicable to charges for late payments).

5

42 U.S.C. § 1395y(b)(2).

Plaintiffs claim that this statute does not entitle CMS to any portion of their tort settlements because under New Jersey law, Plaintiffs injured in tort cannot be awarded damages for the costs of any medical expenses that Medicare has already paid. (Compl. ¶ 16).  Thus, Plaintiffs allege, the lump sum settlements they received contain no money that could be considered a "primary plan" responsible for paying medical expenses and triggering CMS's right to reimbursement for payment.  See 42 U.S.C. § 1395y(b)(2)(B)(ii).[1]

In any event, when CMS has a MSP repayment demand, the law permits referral of that demand to the Treasury Department for collection and for reducing other federal benefits (including Social Security benefits), withholding income tax refunds, or for referring the so-called debt to private collectors.  42 U.S.C. § 1395gg; 31 U.S.C. §§ 3716(c), 3720(A).  CMS's internal policy guidance indicates that debts shall not be referred for collection if the debts are "in appeal (pending at any level)." See CMS IOM Pub. 100-5 Medicare Secondary Payer Manual, Chapter

---

[1]  The only issue presently before the Court is whether it has jurisdiction to hear Plaintiffs' statutory and constitutional claims regarding the MSP actions taken in this case.  The Court need not, at this stage, analyze whether CMS properly sought recovery from Plaintiffs under this statute.  See Fanning v. United States, 346 F.3d 386, 388-89 (3d Cir. 2003) (explaining MSP provisions).

7, Section 60.3.1.1, at
http://www.cms.hhs.gov/manuals/downloads/msp105c07.pdf (last
visited Mar. 7, 2008).  In this case Plaintiffs received
collection notices and warnings that other benefits would be
offset, despite Plaintiffs' ongoing efforts to contest CMS's MSP
repayment demands.  No other benefits were actually withheld from
Plaintiffs, however.

### B.  Plaintiffs' Experiences and Claims

The plaintiffs in this case are Dorothy Merrifield, Marie
Burke, Evelyn Frick, Adele Oberlander, Tara Kizukiewicz and Linda
French Heiser.  Plaintiffs brought this action individually and
on behalf of all other persons similarly situated in March 2007,
although they have not yet filed a motion for class
certification.

The Complaint contains three counts.  The first, for
declaratory judgment and injunctive relief, alleges that
Defendants wrongfully demanded reimbursement under the MSP "from
the proceeds of recoveries obtained by plaintiffs and the class
from third-party tortfeasors in [Plaintiffs'] actions for
personal injuries."  (Compl. ¶ 77.)  This first count shall be
called the "substantive claim."  Plaintiffs allege this Court has
jurisdiction over the substantive claim under 42 U.S.C. § 405(g)
because they have exhausted their claims against Defendants

7

"and/or the exhaustion of such administrative remedies as may be available would be futile."  (Compl. ¶ 10.)

The second count alleges that Defendants violated Plaintiffs' constitutional due process rights under the Fifth and Fourteenth Amendments by depriving them of a property interest without due process of law, by demanding reimbursement from Plaintiffs without demonstrating third-party liability for Medicare-covered expenses or otherwise obeying the statutory and regulatory procedures mandated for making such claims.  (Id. ¶¶ 78-88.)  The second count shall be referred to as the "procedural due process claim."  Plaintiffs allege this Court has jurisdiction over the procedural due process claim pursuant to 28 U.S.C. § 1331.  (Id. ¶ 11.)

The third count is an unjust enrichment claim for which Plaintiffs seek restitution and disgorgement. (Id. ¶¶ 89-94.) Apparently Plaintiffs are also seeking 42 U.S.C. § 405(g) jurisdiction over that claim.  Plaintiffs' unjust enrichment claim is itself a claim for benefits that shall be treated the same as the "substantive claim" in the first count throughout this Opinion.

## 1.  Dorothy Merrifield

According to the Complaint, Plaintiff Dorothy Merrifield was injured on August 31, 2001, in an escalator accident at the Menlo Park Mall in Edison, New Jersey.  (Compl. ¶ 21.)  Some of the

8

treatment she received for injuries was paid for by the Medicare program.  (Id.)  She filed a tort suit in New Jersey Superior Court and resolved that case on or about October 28, 2003 by way of a lump-sum payment.  (Id. ¶ 22.)  Following settlement, Defendants sought reimbursement from Merrifield in the amount of $1,186.63. (Id. ¶ 23.)  Merrifield "consistently rejected the U.S. Defendants' demands for payment, and has notified [them] of her objections."  (Id. ¶ 24).  In response, the Government has sent Merrifield numerous letters and threatened to terminate her Social Security benefits, on which she allegedly depends.  (Id. ¶ 25.)  Merrifield alleges she "has repeatedly requested and been refused access to administrative . . . review of and relief from the Medicare reimbursement claim."  (Id. ¶ 26.)  Merrifield requested "administrative review" of Medicare's demand for repayment "[o]n numerous occasions in 2004 and 2005."  (Id. ¶ 27.)[2]  "However, the Medicare contractor assigned to the matter instead served Ms. Merrifield with a notice of intent to refer her matter to the Department of Treasury for debt collection." (Id. ¶ 27.)

Defendants concede that Plaintiff Merrifield's "debt" was referred to Treasury for collection, but note that it was

---

[2]  Thus, it appears that both the initial determination of the overpayment and Merrifield's objection were made prior to May 1, 2005.  As explained infra, a slightly different set of regulations applies according to whether the initial determination on a claim was made prior to or after May 1, 2005.

recalled on May 23, 2007, more than two years after it was
referred for collection and three months after this action was
filed.

### 2. Marie Burke

Plaintiff Marie Burke was injured on or about April 13, 2001
in a fall at the Park Place/Hilton Casino Resort in Atlantic
City, New Jersey. (Id. ¶ 29.) Some of the treatment she
received for injuries was paid for by the Medicare program.
(Id.) Burke filed suit in New Jersey Superior Court and settled
for a lump sum on or about February 3, 2004. (Id. ¶ 30.)
Following settlement, Defendants began seeking reimbursement from
Burke in the amount of $3,596.11. (Id. ¶ 31.) In addition,
Defendants threatened termination of Social Security benefits on
which Burke allegedly depends. (Id. ¶ 32.) In June of 2004,
Burke paid the Medicare reimbursement claim.[3] (Id. ¶ 33.)

Burke then "sought administrative review and refund of her
payment from the U.S. Defendants with respect to their Medicare
reimbursement claim. During the ensuing two years of
administrative review, the Medicare contractors conducting the
review reaffirmed the Medicare reimbursement claim." (Id. ¶ 34.)
Plaintiff Burke appealed the contractor's determination to an
Administrative Law Judge ("ALJ") and had a hearing on her claim

_____

[3] Thus, the initial determination of her repayment
obligations was also made prior to May 1, 2005.

in August 2006.  (Id. ¶ 35.)  The ALJ issued a favorable decision
several days later, finding that CMS must refund to Plaintiff
Burke the amount she had repaid.  (Id. ¶ 36.)  CMS did not appeal
this decision but did not comply with it before this Complaint
was filed on March 1, 2007.  (Id. ¶ 37-38.)  In fact, Defendants'
first attempt at repayment was not made until May 30, 2007, more
than nine months after the ALJ ordered it.  (See Ex. 10 to Def.
Mot. to Dismiss.)  Burke rejected the attempted repayment
because, among other reasons, it did not include statutory
interest or attorneys' fees and appeared to be an attempt to pick
her off as a class Plaintiff.  (See Ex. 37 to Def. Mot. to
Dismiss.)

### 3.  Evelyn Frick

Plaintiff Evelyn Frick was injured on September 1, 2000 when
she fell down a stairway at the Cameo Restaurant in Garfield, New
Jersey.  (Compl. ¶ 39.)  Like the other plaintiffs, Frick's
medical care was paid for, in part, by Medicare.  (Id.)  After
filing suit in New Jersey Superior Court, Frick settled for a
lump sum on June 29, 2004.  (Id. ¶ 40.)  Thereafter, Defendants
sought reimbursement from Frick in the amount of $19,809.04.
(Id. ¶ 41.)

After Defendants pursued reimbursement from Frick, an Order
was entered in New Jersey Superior Court, upon the motion of
Frick, determining that no portion of the settlement proceeds

11

from her personal injury claim was for compensation of medical
expenses already paid by other sources.  (Id. ¶ 42.)  That Order
was served on Defendants, who nevertheless continued to pursue
their claim against her for over $19,000.  (Id. ¶¶ 42-43.)
Defendants sent letters demanding reimbursement and threatening
collection and other legal actions, including the termination of
Frick's Social Security benefits.  (Id. ¶ 44.)  On or about May
16, 2006, Frick formally requested a waiver from CMS of MSP
recovery efforts.  (Id. ¶ 45.)[4]  She received no response for
three months and sent a letter in September 2006 to CMS and its
contractor, again requesting a waiver.  (Id. ¶ 46.)  Frick
received no hearing or other disposition of her request for
review prior to filing the Complaint in this action in March
2007.  (Id. ¶ 47.)

However, on September 17, 2007, Defendants granted Frick's
request for a full waiver of Medicare's claim for reimbursement.
(See Ex. 3 to Def. Supp Br.)  Defendants granted the waiver
because they found that Frick was not at fault for the
"overpayment" and because Frick submitted the court order
indicating that "no portion of [her] recovery is attributable to
medical expenses."  (Id.)

_____

      [4]  Therefore, the regulations effective May 1, 2005 shall
apply to Frick's appeal of the initial determination of her
waiver.

4.  <u>Plaintiff Adele Oberlander</u>

Plaintiff Adele Oberlander was injured on December 10, 2005 and she settled her state court action on or about December 11, 2006.  (Compl. ¶¶ 48-49.)  Defendants asserted a claim for reimbursement against Oberlander in the amount of $28,712.94.  (Id. ¶ 50.)  Because she was afraid of losing other federal benefits, Oberlander paid the amount demanded under protest on or about February 6, 2007.  (Id. ¶¶ 50-51.)  This action was filed approximately one month later.  (Id. ¶ 51.)[5]

On September 13, 2007 Defendants sent Oberlander and her attorney a letter indicating that CMS was referring her "debt" to Treasury for collection.  (Ex. 1 to Def. Supp. Br.)  Defendants claim they have since ordered the Medicare contractor to retract that letter and to refrain from referring the claim on Oberlander to Treasury for collection as a debt.  (Fowler Decl. ¶ 5.)

5.  <u>Tara Kiziukiewicz</u>

Plaintiff Tara Kiziukiewicz was injured on or about June 15, 2000 in a motor vehicle accident in Edison, New Jersey.  (Compl. ¶ 52.)  Medicare paid for some of the medical care she received for her injuries.  (Id.)  She filed suit in New Jersey Superior Court against her alleged tortfeasors and settled for a lump sum on or about June 15, 2002.  (Id. ¶ 53.)  Thereafter, Defendants

---

[5]  Ms. Oberlander's challenge will also be governed by the updated regulations.

asserted a claim for reimbursement against Kiziukiewicz for $2,464.63, which she paid.  (Id. ¶¶ 54-55.)

### 6. <u>Linda French Heiser</u>

Plaintiff Linda French Heiser was injured on or about December 31, 2004 in a motor vehicle accident in Mount Holly, New Jersey.  (Id. ¶ 56.)  She settled her case on or about July 27, 2005 and Defendants subsequently sought reimbursement in the amount of $16,046.61.  (Id. ¶¶ 57-58.)[6]  Defendants sent letters demanding reimbursement and threatening collection and other legal actions, including the termination of Heiser's Social Security benefits, on which she allegedly depends.  (Id. ¶ 59.)  Heiser sought administrative review of the claim for reimbursement and the Medicare contractors conducting the review reaffirmed the reimbursement claim.  (Id. ¶ 60.)

On October 11, 2007, Defendants affirmed their initial determination to deny Heiser's request for a waiver, finding that her circumstances "do not fall within the criteria used to grant waiver."  (Ex. 4 to Def. Supp. Br.)  The letter indicates that Heiser had 180 days to appeal the denial of a waiver.  On October 26, 2007, Defendants sent a letter to Plaintiff Heiser and her attorney indicating it was referring her "debt" to Treasury for collection.  (Def. Ex. 2 to Supp. Br.)  Defendants claim they

---

[6] Ms. Heiser's administrative appeal is also subject to the updated regulations.

14

have since ordered the Medicare contractor to retract that letter
and to refrain from referring Heiser's claim to Treasury for
collection.  (Fowler Decl. ¶ 5.)

### C.  Availability of Administrative Review

The law provides two potential avenues for administrative
review of CMS's reimbursement determinations: one is a request
for a waiver and the other is an appeal contesting the MSP
overpayment claim.  In general, Medicare beneficiaries are
entitled to extensive process rights for any decision by CMS that
qualifies as an "initial determination."  See 42 U.S.C. §
1395ff(b)(1)(A).  Agency review, a hearing before an ALJ and,
ultimately, judicial review in district court are available for
those determinations that are "initial determination[s]".  See 42
U.S.C. § 1395ff(b)(1).[7]

"Initial determinations" are specifically defined by CMS
regulations to include some types of decisions and exclude
others.  Complicating matters, CMS amended its regulations in
2005, effective May 1, 2005, so that for the claims on which
initial determinations were made prior to May 1, 2005, an older
set of regulations applies, including a different definition of

---

[7] Expedited access to judicial review is available when the
agency determines, upon motion by a claimant or otherwise, that
it does not have the authority to decide the question of law
relevant to the matters in controversy.  42 U.S.C. §
1395ff(b)(2).  There is no indication that Plaintiffs ever made
such a motion to the agency.

"initial determination."  See Medicare Program: Changes to the
Medicare Claims Appeal Procedures, 70 Fed. Reg. 11420, 11420,
11425 (March 8, 2005).  Compare 42 C.F.R. § 405.704 (actions that
are initial determinations for older claims), with 42 C.F.R. §
405.924 (actions that are initial determinations after May 1,
2005).  Nevertheless, whether Plaintiffs received initial
determinations before or after May 1, 2005, extensive
administrative review is available for their claims in this case,
as explained further below.

       1.   Waivers are Initial Determinations

The first type of relevant "initial determination" is a
decision by CMS whether to waive its MSP overpayment claim on a
beneficiary.  The Medicare statute and implementing regulations
allow individuals to seek waivers from the MSP reimbursement
requirement when certain policy considerations merit such
equitable relief.

No reimbursement to CMS is permitted under the MSP, even if
it is factually determined that there was indeed an overpayment
of Medicare benefits,

> [if] an individual . . . is without fault
> [and] if such [repayment] would defeat the
> purposes of [the Medicare Act] or would be
> against equity and good conscience.

42 U.S.C. § 1395gg(c); see also 42 C.F.R. § 405.355 (no
adjustment of recovery for overpayment when adjustment would be
from someone without fault and (1) would defeat the purposes of

16

the Act or (2) would be against equity and good conscience).  For example, "[t]he regulations explain that the purposes of the Medicare Act would be defeated if recovery would deprive a person of income required for ordinary and necessary expenses.  20 C.F.R. § 404.508."  In re Zyprexa Prod. Liab. Litig., 451 F. Supp. 2d 458, 466 (E.D.N.Y. 2006).  Accordingly, Medicare beneficiaries can request waivers of their obligations to repay Medicare under the MSP provisions by arguing that repayment would defeat the purposes of the Medicare Act or be unfair.  Because CMS's determination whether to grant or deny such a requested waiver is an "initial determination," under both the old and new regulations, as explained below, agency and judicial review are available to appeal denials of waivers.

Under the older set of regulations, initial determinations include determinations about "[w]hether a waiver of adjustment or recovery under sections 1870 [42 U.S.C. § 1395gg] (b) and (c) of the Act is appropriate when an overpayment of hospital insurance benefits or supplementary medical insurance benefits . . .  has been made with respect to an individual." 42 C.F.R. § 405.704(b)(14).  See Fanning v. United States, 346 F.3d 386, 401 n.14 (3d Cir. 2003)(explaining that Plaintiffs could seek relief via waivers and that decisions on waiver requests are subject to administrative and judicial review).

The newer regulations also define initial determinations to include decisions about whether "a waiver of adjustment or recovery under sections 1870(b) and (c) of the Act is appropriate . . . [f]or a Medicare Secondary Payer recovery claim against a beneficiary . . . ."  42 C.F.R. § 405.924 (b)(13)(ii).[8]

Thus, regardless of when a waiver determination is made, CMS provides an internal review process and 42 U.S.C. § 405(g) provides access to district court upon exhaustion of those administrative appeals.

   2.   Initial Determination Includes Decision that
        Medicare Has a Recovery Claim Under the MSP

The second type of relevant "initial determination" is a determination by CMS that it has a recovery claim against a beneficiary under the MSP statute.  The updated regulations define initial determinations to include determinations by CMS that, pursuant to the Medicare Secondary Payer Act, "Medicare has

---

   [8]   The "initial determination" definition for decisions before May 1, 2005 also includes a catch-all for "[a]ny other issues having a present or potential effect on the amount of benefits to be paid under part A of Medicare, including a determination as to whether there has been an overpayment or underpayment of benefits paid under part A, and if so, the amount thereof."  42 C.F.R. § 405.704(b)(13).
   The newer catch-all is more expansive, providing for administrative and judicial review for "[a]ny other issues having a present or potential effect on the amount of benefits to be paid under Part A or Part B of Medicare, including a determination as to whether there was an underpayment of benefits paid under Part A or Part B, and if so, the amount thereof." 42 C.F.R. § 405.924 (b)(12).  But see 42 C.F.R. § 405.926 (explicitly excluding certain decision from definition of initial determination).

a recovery claim against a . . . beneficiary for services or items that were already paid by the Medicare program . . . ." 42 C.F.R. § 405.924(b)(15). Thus, when CMS makes a determination, after May 1, 2005, that it a beneficiary must repay CMS for benefits CMS conditionally paid under the MSP, that determination is an "initial determination" and the Medicare beneficiary may challenge it directly rather than solely seeking a waiver.

In other words, because the determination by CMS that it has an overpayment claim is now an "initial determination," Plaintiffs can seek review of that claim in the agency and eventually in court. See 42 C.F.R. § 405.924(b)(15). The validity of the underlying overpayment claim can be challenged and need not be addressed as a request for an equitable waiver.

Thus, all plaintiffs in this action who received initial determinations after May 1, 2005 that they must repay Medicare are entitled to agency review pursuant to 42 U.S.C. § 1395ff(b)(1).

On the other hand, general, non-case specific challenges about whether MSP applies to certain kinds of funds are not "initial determination[s]" and therefore are not subject to hearings before ALJs. See 42 C.F.R. § 405.926(j). In describing what decisions are not "initial determination[s]," the regulations list one type of determination relevant here:

> Determinations for a finding regarding the general applicability of the Medicare

19

>           Secondary Payer provisions (as opposed to the
>           application of these provisions to a
>           particular claim or claims for Medicare
>           payment for benefits).

42 C.F.R. § 405.926(j). Pursuant to that regulation, it appears that there is no right for a Medicare beneficiary to appeal the agency's general determination that lump sum personal injury settlements in New Jersey require MSP reimbursement. Instead, each beneficiary must appeal the determinations made in his or her own case.

## III. PARTIES' ARGUMENTS

### A. Government Defendants

In support of their motion to dismiss, Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' claims for two reasons. First, Defendants argue that the Medicare Act precludes this Court from exercising federal question jurisdiction over Plaintiffs' federal claims, normally granted by 28 U.S.C. § 1331, because the claims "aris[e] under" the Medicare Act. (Def. Br. at 22-31) (relying on 42 U.S.C. § 405(h)). Defendants note that the Supreme Court has found even constitutional claims to "aris[e] under" the Social Security Act, when interpreting this section, in any case where the Act provides "both the standing and the substantive basis" for the constitutional claims. See Weinberger v. Salfi, 422 U.S. 749, 760-61 (1975).

Second, Defendants argue that 42 U.S.C. § 405(g) provides the only statutory basis for federal district courts to hear claims arising under the Medicare Act, but that such jurisdiction is not proper over any claim until the agency renders a final decision on that claim after a hearing.  Defendants concede that this "final decision" rule contains two components and that the second is waivable: (1) presentment of the claim to the Secretary of HHS and (2) exhaustion of the administrative procedures prescribed by statute and regulation.  However, Defendants argue that Plaintiffs Oberlander, Kiziukiewicz and  Merrifield have failed to satisfy the nonwaivable presentment requirement and that the Court should not waive the exhaustion requirement for Plaintiff Heiser because the Medicare Act provides the appropriate administrative mechanism for beneficiaries to contest agency overpayment determinations.  (Def. Br. at 35.)  Defendants further argue that the administrative review process is not futile because CMS may grant waivers of the repayment it seeks in certain circumstances.  (Def. Br. at 37).

Finally, Defendants argue that Plaintiffs Burke's and Frick's claims are moot because CMS has granted them waivers and attempted to refund the money they paid to Medicare.  (See Def. Br. at 39.)

21

**B.  Plaintiffs' Arguments**

In opposition to the motion to dismiss, Plaintiffs argue that the Court has jurisdiction to hear this matter and that Burke's and Frick's claims are not moot because Defendants have failed to show that their belated, voluntary compliance with the law ensures that the violations at issue will not recur.

Plaintiffs concede that their claims "arise[] under the Medicare Act."  (Pl. Br. at 11.)  However, they claim that they have met the nonwaivable prerequisite to jurisdiction in 42 U.S.C. § 405(g) by presenting their claims to the agency and argue that the Court should waive the full exhaustion requirement because their claims are collateral to claims for benefits and there is no established administrative procedure for adjudicating the claims at issue here, namely, whether Defendants exceeded their statutory authority by seeking reimbursement from New Jersey beneficiaries who settled personal injury lawsuits for lump sums.  Thus, Plaintiffs argue, further administrative proceedings would be futile and irreparably harm Plaintiffs who must immediately pay CMS or suffer penalties while their waivers are pending.  (Pl. Br. at 22-23.)  Accordingly, Plaintiffs argue that the Court should waive the requirement of administrative exhaustion, which is prudential rather than jurisdictional.

In addition, Plaintiffs argue that the Court has independent jurisdiction over their constitutional due process claims under

28 U.S.C. § 1331 and that such claims need not meet the
exhaustion requirements of 42 U.S.C. § 405(g).  (Pl. Br. at 28-
29.)

## IV.  ANALYSIS

### A.  Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Supreme Court has noted that this Court's jurisdiction
is limited:

> Federal courts are courts of limited
> jurisdiction. They possess only that power
> authorized by Constitution and statute, see
> Willy v. Coastal Corp., 503 U.S. 131, 136-137
> (1992); Bender v. Williamsport Area School
> Dist., 475 U.S. 534, 541 (1986), which is not
> to be expanded by judicial decree, American
> Fire & Casualty Co. v. Finn, 341 U.S. 6
> (1951).  It is to be presumed that a cause
> lies outside this limited jurisdiction, Turner
> v. Bank of North-America, 4 U.S. 8 (1799), and
> the burden of establishing the contrary rests
> upon the party asserting jurisdiction, McNutt
> v. General Motors Acceptance Corp., 298 U.S.
> 178, 182-183 (1936).

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377
(1994).

Challenges to subject matter jurisdiction under Rule
12(b)(1) may be "facial" or "factual."  Facial attacks challenge
the sufficiency of the Complaint's allegations, so a court
adjudicating a facial attack must accept those allegations as
true.  Emerson Elec. Co. v. Le Carbone Lorraine, 500 F. Supp. 2d
437, 443 (D.N.J. 2007).

But this motion to dismiss is a factual attack on jurisdiction because jurisdiction depends on what transpired during the administrative review process, including whether Plaintiffs are actually deprived of access to that process. Factual attacks allow the Court to look beyond the allegations of the Complaint and do not require the Court to presume Plaintiffs' allegations are true.

> [A] trial court considering a factual attack accords plaintiff's allegations no presumption of truth.  In a factual attack, the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings. In <u>Cestonaro v. United States</u>, 211 F.3d 749 (3d Cir. 2000), we said, "Because the government's challenge to the District Court's jurisdiction was a factual one under Fed. R. Civ. P. 12(b)(1), we are not confined to the allegations in the complaint (nor was the District Court) and can look beyond the pleadings to decide factual matters relating to jurisdiction." <u>Id.</u> at 752 (citation omitted).

<u>Turicentro v. Am. Airlines</u>, 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citations omitted).  In "factual" Rule 12(b)(1) attacks on jurisdiction,

> no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

<u>Mortensen v. First Fed. Sav. and Loan</u>, 549 F.2d 884, 891 (3d Cir. 1977).  Further, "the court [is] not confined to allegations in

24

the plaintiff's complaint, but [may] consider affidavits,
depositions, and testimony to resolve factual issues bearing on
jurisdiction." Gotha v. United States, 115 F.3d 176, 179 (3d
Cir. 1997).[9]

### B.  Federal Question Jurisdiction

1.   Section 405(h) and the *Michigan Academy* exception

First, the Court must determine whether it may assert
jurisdiction over all or some of Plaintiffs' claims under 28
U.S.C. § 1331 or whether 42 U.S.C. § 405(g) provides the
exclusive basis for this Court's jurisdiction over the claims
alleged.

42 U.S.C. § 1331 does not provide the federal courts with
jurisdiction to hear claims "arising under" the Medicare Act.
The Medicare Act, by operation of 42 U.S.C. § 1395ii,[10]
incorporates 42 U.S.C. § 405(h), which provides:

> The findings and decision of the
> [Administrator of CMS] after a hearing shall
> be binding upon all individuals who were
> parties to such hearing. No findings of fact
> or decision of the [Administrator of CMS]
> shall be reviewed by any person, tribunal, or

---

[9]  "Nor will the Court convert these motions to dismiss into
motions for summary judgment, as Rule 12(b) permits, because
these motions were filed in lieu of Answers, shortly after the
Amended Complaint was served and likely before any substantial
discovery occurred." Emerson Elec. Co. v. Le Carbone Lorraine,
500 F. Supp. 2d 437, 443 (D.N.J. 2007).

[10]  42 U.S.C. § 1395ii makes certain provisions of the Social
Security Act, including 42 U.S.C. § 405(h), applicable to the
Medicare Act.

             governmental agency except as herein
             provided. **No action against the United
             States, [the Administrator of CMS], or any
             officer or employee thereof shall be brought
             under section 1331 or 1346 of Title 28 to
             recover on any claim arising under this
             subchapter**.

(emphasis added).

Plaintiffs generally cannot assert their claims in District Court under 28 U.S.C. § 1331 because the claims arise under Medicare.  See Weinberger v. Salfi, 422 U.S. 758, 760-61 (1975) (even constitutional claims "arise under" Social Security Act, within meaning of 42 U.S.C. § 405(h), when Social Security Act "provides both the standing and the substantive basis for the presentation of [plaintiffs'] constitutional claims").  This is so for both the substantive and procedural due process claims. As the Third Circuit has said, "If [Plaintiff's] class action complaint asserts a claim that 'aris[es] under' the Medicare Act, then the third sentence of § 405(h) precludes the district court from exercising federal question jurisdiction over it."  Fanning, 346 F.3d at 392.  Thus, for claims arising under Medicare, 42 U.S.C. § 405(g) generally provides the exclusive basis for federal judicial jurisdiction and then only after exhaustion of agency appeals, as discussed below.

42 U.S.C. § 405(h) is more than an exhaustion requirement; it precludes federal courts from ever relying on 28 U.S.C. § 1331 for exercising jurisdiction over claims arising under the

Medicare Act.  See, e.g., Heckler v. Ringer, 466 U.S. 602, 614-15 (1984); Fanning, 346 F.3d 386.

> The third sentence of 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all "claim[s] arising under" the Medicare Act.

Heckler v. Ringer, 466 U.S. at 614-15.

However, in transporting this restriction on § 1331 jurisdiction from the Social Security context into the Medicare context, the Court must do so with an awareness that not all claims arising under the Medicare Act receive true agency review. Thus, when 42 U.S.C. § 1395ii makes 42 U.S.C. § 405(h) applicable to the Medicare Act, the interpretation of 42 U.S.C. § 405(h) changes to include exceptions for any claims arising under Medicare that could not receive true agency review.  Medicare plaintiffs need not channel their claims through CMS if the agency provides "no review at all" for the claims at issue.  See Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 19 (2000).  "Section 1395ii makes § 405(h) applicable to the Medicare Act [only] 'to the same extent as' it applies to the Social Security Act."  Id.  The Supreme Court has thus interpreted that phrase in 42 U.S.C. § 1395ii, "to the same extent,"

> as applying § 405(h) "mutatis mutandis," i.e., "[a]ll necessary changes having been made." Black's Law Dictionary 1039 (7th ed.

> 1999).  And it applied § 1395ii with one
> important change of detail - a change
> produced by not applying § 405(h) where its
> application to a particular category of
> cases. . . would not lead to a channeling of
> review through the agency, but would mean no
> review at all.

Id. at 17 (citing Bowen v. Michigan Academy of Family Physicians,
476 U.S. 667, 681 (1986) ("Michigan Academy")).

        In Michigan Academy, family physicians sued to challenge the
validity of a federal regulation, promulgated under Part B of
Medicare, for which there was no agency review available.  The
challenged provision authorized the payment of benefits in
different amounts for similar services.  The Supreme Court held
that 42 U.S.C. § 405(h), applied by application of 42 U.S.C. §
1395ii, did not bar federal district court jurisdiction because
there was no clear indication that the statute was meant to
foreclose review of substantial statutory and constitutional
challenges.  Indeed, the Court noted, it would be unreasonable to
presume that Congress intended to permit eventual judicial review
of less substantial determinations but to foreclose all review of
claims alleging that CMS has violated the law by promulgating an
unconstitutional regulation.  The Michigan Academy case has been
interpreted as creating an exception to 42 U.S.C. § 405(h)'s bar
on 28 U.S.C. § 1331 federal question jurisdiction for claims
arising under Medicare when such a bar would foreclose all review

28

of those claims, rather than just channel them through the
agency.  See Fanning, 346 F.3d at 400.

  For example, the Third Circuit's Fanning decision
acknowledges that where CMS provides no process for review,
federal claims are cognizable in federal court notwithstanding
the third sentence of 42 U.S.C. § 405(h).  Id. ("Of course, the .
. . plaintiffs would not have to channel their claim through the
agency if they could avail themselves of the Michigan Academy
exception. That is to say, channeling would not be required if
they could show that they have no way of having their claims
reviewed.")[11]

---

  [11]  While to some extent the Michigan Academy line of cases
is in tension with the Weinberger v. Salfi line, Weinberger v.
Salfi itself indicated that its decision was premised in part on
the availability of judicial review under 405(g).  422 U.S. at
762.  In contrast to another case in which the Court found
federal question jurisdiction available for decisions by the
Veterans' Administrator, Johnson v. Robison, 415 U.S. 361 (1974),
the Weinberger v. Salfi Court noted that if the Supreme Court had
precluded access to federal court for constitutional claims
related to decisions of the Veterans' Administration, "absolutely
no judicial review would be available," Weinberger v. Salfi, 422
U.S. at 762.  "Not only would such a restriction have been
extraordinary, such that 'clear and convincing' evidence would be
required before we could ascribe such intent to Congress, but it
would have raised a serious question of the validity of the
statute as so construed." Id.  Meanwhile, there was no problem
with such a construction of 405(h) because "the Social Security
Act itself provides jurisdiction for constitutional challenges to
its provisions." Id.  By requiring plaintiffs to channel their
statutory and constitutional claims through the Social Security
Administration, the Social Security Act "assures the Secretary
the opportunity prior to constitutional litigation" to resolve
the issue.  Id.  And "the Social Security Act itself provides for
district court review of the Secretary's determinations [under]
42 U.S.C. § 405(g)." Id. at 463.  Accordingly, even the

Thus, notwithstanding the third sentence of 42 U.S.C. §
405(h), federal question jurisdiction is available under 28
U.S.C. § 1331 if the claims at issue would receive no review by
CMS or later by a court.  "[A] plaintiff may avoid § 405(h)'s
exhaustion requirement and bring a § 1331 action only where [he
or she] establishes that no administrative or judicial review is
possible."  Walters v. Leavitt, 376 F. Supp. 2d 746, 755 (E.D.
Mich. 2005).  This is the so-called Michigan Academy exception
and it is a narrow one.

    2.   Procedural Due Process Claims Arise Under Medicare
        Act

Plaintiffs allege in their Complaint that this Court has
subject matter jurisdiction over their procedural due process
claims pursuant to 28 U.S.C. § 1331.  In their motion to dismiss,
Defendants argue that pursuant to Weinberger v. Salfi, 422 U.S.
749 and Heckler v. Ringer, 466 U.S. 602, even Plaintiffs'
procedural due process claims "arise under" the Medicare Act and
therefore, the Court cannot exercise jurisdiction over those
claims under 28 U.S.C. § 1331.  (Def. Br. at 23-24.)  Indeed, it

_____

strictest application of the Weinberger v. Salfi rule seems to
require courts to interpret 42 U.S.C. §§ 405(g) and (h) together
such that constitutional challenges to agency actions can, at
some point, be reviewed in district court.  In other words, where
there can be no decision after a hearing on the merits, district
court jurisdiction should still be permitted either under  §
405(g), by the court's waiver of the full exhaustion requirement,
or by an interpretation of § 405(h) which finds that § 1331
jurisdiction is available for those claims which the agency has
no process for reviewing.

is undisputed that all claims in this case arise under the Medicare Act. (Pl. Br. at 11.)  In their arguments in opposition to the motion to dismiss, Plaintiffs make no distinction between the procedural due process and substantive claims, nor is the Court aware of any that would impact whether this Court has federal question jurisdiction over the procedural due process claims, which arise under Medicare.  To the contrary, the Supreme Court has stated:

> [T]o be true to the language of the statute, the inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim "arises under" the Act, not whether it lends itself to a "substantive" rather than a "procedural" label. See Mathews v. Eldridge, 424 U.S., at 327 (recognizing that federal-question jurisdiction is barred by 42 U. S. C. § 405(h) even in a case where claimant is challenging the administrative procedures used to terminate welfare benefits).

Heckler v. Ringer, 466 U.S. at 615.  Thus, the procedural due process claims, which, like the substantive claims, arise under the Medicare Act, cannot be heard in this Court pursuant to 28 U.S.C. § 1331, unless the Michigan Academy exception applies, as discussed below.

> 3.   No Federal Question Jurisdiction Because Agency and Judicial Review Available

As explained above, extensive process, including a hearing before an ALJ and ultimately judicial review, is available for Plaintiffs to contest the MSP overpayment claims or to seek

waivers.  Therefore, the <u>Michigan Academy</u> exception does not apply to Plaintiffs' claims.

Indeed, in <u>Fanning</u>, the Third Circuit Court of Appeals held that class plaintiffs challenging MSP determinations have sufficient agency review processes available to them – the ability to seek individual waiver determinations of MSP overpayment claims on their settlement funds –  so that the <u>Michigan Academy</u> exception does not apply.  Specifically, in <u>Fanning</u>, decided in 2003, the Third Circuit found that plaintiffs disputing MSP claims on their settlement funds were entitled to an agency hearing under the statute and applicable regulations.

> It is obvious that when another insurer makes a payment for medical services Medicare has already paid for, a duplicate payment results. In the absence of reimbursement to Medicare, the duplicate payment is an overpayment of Medicare under the MSP. <u>See</u> 42 C.F.R. § 405.704(b)(13); <u>Buckner v. Heckler</u>, 804 F.2d 258, 259 (4th Cir. 1986).  As we have discussed, the MSP allows the Secretary to obtain reimbursement of the overpayment. 42 U.S.C. §§ 1395y(b)(2)(A)(ii), 1395y(b)(2)(B)(ii).  However, a beneficiary who disagrees with the Secretary's determination that an overpayment of Medicare benefits has been made on his or her behalf is entitled to a hearing before the Secretary as provided in 42 U.S.C. § 405(b). <u>See</u> 42 U.S.C. § 1395ff(b)(1).  If the beneficiary is dissatisfied with the Secretary's final decision after a hearing, the beneficiary is entitled to judicial review of that decision as provided in 42 U.S.C. § 405(g).

<u>Fanning</u>, 346 F.3d at 391.

The same process that was available to the <u>Fanning</u>
plaintiffs is available to Plaintiffs in this case.  It appears
that Plaintiff Merrifield has process rights identical to those
available to the <u>Fanning</u> plaintiffs.  All other Plaintiffs have
those rights plus the additional rights provided for in the
updated regulations.  These other Plaintiffs are entitled to
hearings and judicial review for their challenges to Defendants'
substantive determinations that "Medicare has a recovery claim
against [them] for services or items that were already paid by
the Medicare program," 42 C.F.R. § 405.924(b)(15), and for their
requests for waivers, 42 C.F.R. § 405.924 (b)(13)(ii).  Thus,
under the holding in <u>Fanning</u>, the <u>Michigan Academy</u> exception does
not permit Plaintiffs to bring their claims into court under 28
U.S.C. § 1331.

Despite the delays attendant on the agency review process,
Plaintiffs have not made a sufficient showing, in accordance with
<u>Fanning</u>, that they have absolutely no way of getting CMS to
review their challenges to CMS's MSP overpayment demands on their
settlements.  <u>See</u> <u>Fanning</u>, 346 F.3d at 400 (channeling not
required if plaintiffs show "that they have no way of having
their claims reviewed").  Accordingly, as in <u>Fanning</u>, the
<u>Michigan Academy</u> exception does not apply to Plaintiffs' claims
arising under the Medicare Act and the only potential basis for

jurisdiction is 42 U.S.C. § 405(g), which shall be discussed below.

### C.  Section 405(g) Jurisdiction

Because the Michigan Academy exception does not apply, this Court may only exercise jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. § 405(g).  For claims that arise under Medicare and for which agency review is available, 42 U.S.C. § 405(g) is the exclusive basis by which the Court could exercise jurisdiction.  Defendants argue that 42 U.S.C. § 405(g) grants jurisdiction to this Court over the claims alleged here, but only after a final decision made after a hearing.[12]

At a minimum, a plaintiff seeking a court's review pursuant to 42 U.S.C. § 405(g) must meet the presentment requirement courts find inherent in that statute; the full exhaustion requirement can be waived - by courts or the agency - in certain circumstances.

> [Weinberger v.] Salfi identified several conditions which must be satisfied in order to obtain judicial review under § 405(g). Of these, the requirement that there be a final decision by the Secretary after a hearing was regarded as "central to the requisite grant of subject-matter jurisdiction . . .." 422 U.S., at 764. Implicit in [Weinberger v. ]Salfi however, is the principle that this condition

---

[12]  While all parties agree that Plaintiffs Burke and Frick have exhausted the agency's administrative processes, Defendants argue that their claims should be dismissed as moot because the agency ultimately waived its demand for repayment, that is, these individuals succeeded before the agency.

> consists of two elements, only one of which is
> purely "jurisdictional" in the sense that it
> cannot be "waived" by the Secretary in a
> particular case.  The waivable element is the
> requirement that the administrative remedies
> prescribed by the Secretary be exhausted. The
> nonwaivable element is the requirement that a
> claim for benefits shall have been presented
> to the Secretary. Absent such a claim there
> can be no "decision" of any type. And some
> decision by the Secretary is clearly required
> by the statute.

Mathews v. Eldridge, 424 U.S. 319, 328 (1976).

Plaintiffs claim that they have all met this presentment requirement, and this Court agrees - with one exception. Plaintiffs point out that all of them, except for Plaintiff Kiziukiewicz, directly notified CMS and/or its contractors that they disputed the MSP claims for reimbursement.

The facts alleged in the Complaint and in the evidence bearing on this motion to dismiss appear to satisfy the presentment requirement for every plaintiff except Kiziukiewicz, who never made her dispute with the overpayment claim known to the agency prior to filing this action.  Cf. id. (finding presentment when Secretary terminated benefits, plaintiff protested in writing, but brought suit instead of appealing). Indeed, the Third Circuit has found that when someone is receiving benefits under the Social Security Act, the termination of benefits is itself sufficient to constitute "presentment." Kuehner v. Schweiker, 717 F.2d 813, 817-19 (3d Cir. 1983), vacated on other grounds sub nom., Heckler v. Kuehner, 469 U.S.

35

977 (1984); <u>Liberty Alliance of the Blind v. Califano</u>, 568 F.2d 333 (3d Cir. 1977). <u>See also</u> <u>Kaplan v. Chertoff</u>, 481 F. Supp. 2d 370, 381 (E.D. Pa. 2007) ("Like the plaintiffs in <u>Liberty Alliance</u> and <u>Kuehner</u>, Plaintiffs here have met the presentment requirement. They have previously established entitlement to SSI benefits, which entitlement has been or is at risk of being terminated.")  Similarly, the agency's decision to seek reimbursement from Plaintiffs, together with the objections from Plaintiffs, are sufficient to constitute presentment.[13]

Thus, the Court must determine whether to waive the second, non-jurisdictional requirement of exhaustion and exercise jurisdiction under § 405(g) for the substantive or procedural due process claims alleged in the class complaint for all Plaintiffs except Kiziukiewicz.

While ordinarily an agency may waive the exhaustion requirement if and when it is satisfied that no further review is warranted "either because the internal needs of the agency are fulfilled or because the relief that is sought is beyond [the agency's] power to confer," there are also rare cases in which a court may waive the exhaustion requirement. <u>Eldridge</u>, 424 U.S.

_____

[13]  Even if the demands by CMS on Plaintiff Kiziukiewicz technically constitute presentment, and the Court could therefore waive full exhaustion under 405(g), the Court would decline to do so because (1) the agency has not had adequate opportunity to address Kiziukiewicz's claims and (2) for the same reasons it is declining to waive exhaustion as to the claims of the plaintiffs who did present their disputes to CMS.

at 330.  The Supreme Court has considered two factors in determining that "a claimant's interest in having a particular issue resolved promptly is so great," that waiver is appropriate: (1) whether the claim is entirely collateral to a claim for benefits and (2) whether there is a colorable claim that full relief could not be obtained after the fact, i.e., that the claimants would be irreparably injured if the exhaustion requirement were enforced.  Id.; Bowen v. City of New York, 476 U.S. 467, 483 (1986).  As the Supreme Court has said when interpreting § 405(g), "the doctrine of exhaustion should be applied with a regard for the particular administrative scheme at issue."  Weinberger v. Salfi, 422 U.S. at 765.

The Court finds that neither the substantive nor procedural due process claims alleged in the Complaint are "entirely collateral" to claims for benefits and therefore the Court shall not waive full exhaustion.

As to the substantive claims, Plaintiffs are seeking to retain the value of benefits conditionally paid on their behalf when they were injured.  Such claims not only arise under Medicare, but they are also essentially claims for benefits. Although this Court is aware that the Third Circuit Court of Appeals has, in the past, indicated that a class challenge to agency policy renders such claims distinct from claims for benefits, see Bailey v. Sullivan, 885 F.2d 52, 65 (3d Cir. 1989)

("claims of systemwide misapplication or invalidity are collateral to the claims for individual benefits"), this Court is also aware that if it granted the injunctive relief Plaintiffs seek, the Court would be granting Plaintiffs the right to retain the conditional benefits and, in that sense, the substantive claims at issue in this case are not collateral to claims for benefits.  The Court would be ordering CMS to provide Plaintiffs with benefits.

Even if these were not essentially claims for benefits, the Court is further persuaded not to waive the full exhaustion requirement for the substantive claims because any wrongful MSP overpayment claim can be rectified, ultimately, by refunding any repayments of those benefits, with interest for the time they were wrongfully retained by Defendants.  That is, retroactive application of relief will make Plaintiffs whole for the substantive claims.[14]

The Court also declines to waive exhaustion for Plaintiffs' procedural due process claims, which are intertwined with their unexhausted claims for benefits.  While Defendants admit they imposed repayment demands on Plaintiffs prior to any hearing

---

[14]   The Court notes, also, that Plaintiffs apparently have not requested that the agency relieve them of the requirement of full exhaustion as they could have, 42 U.S.C. § 1395ff(b)(2), perhaps in part because many of them are litigating their substantive claims under the equitable waiver provisions, as well, which implicates issues of financial need not relevant in this action.

38

about the matter and contrary to Defendants' internal policies, Defendants have ceased such collections and have noted that collection of contested overpayment is contrary to CMS policy. The Court shall credit CMS's internal policy as binding on it and expects that Defendants shall cease collecting all disputed MSP overpayments as to all beneficiaries, as its policy requires. See Fanning, 346 F.3d at 400-01 (relying on Medicare Manual's description of agency process actually available for determining that Michigan Academy exception does not apply). Furthermore, there was no actual cessation of benefits on which these plaintiffs depend, a factor that has been critical in other due process benefit lawsuits. See Eldridge, 424 U.S. at 326-32 (court had jurisdiction to hear claim that plaintiff was entitled to pretermination hearing but noting that plaintiff had followed § 405(g) procedures). Such an actual or imminent cessation of essential benefits is a harm that would be difficult to remedy after the fact, but it is not a harm likely to occur in this case. Therefore, the Court shall not waive the full exhaustion requirement for the procedural due process claims.

The Court is aware that it should not "mechanically" apply the two concerns identified in Eldridge when deciding whether to waive full exhaustion. "The ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the Eldridge factors, but should also be guided by

39

the policies underlying the exhaustion requirement."  Bowen v. New York, 476 U.S. 467, 484 (1986).  Thus, the Court shall review whether those policy interests support waiver in this case. Bowen v. New York identified the policies underlying the exhaustion requirement as follows: "'preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.'"  Id. (quoting Weinberger v. Salfi, 422 U.S. at 765).

Permitting Plaintiffs who have not exhausted their available remedies to come directly into district court with their claims for benefits would interfere prematurely with agency processes. This is especially so given that the Plaintiffs who have fully exhausted their claims have succeeded.

Requiring exhaustion may hamper, rather than improve, the efficiency of the agency's collection efforts with regard to all tort plaintiffs in New Jersey and thus the second policy interest weighs slightly in favor of waiving full exhaustion.  As it stands, Defendants expend significant resources identifying, collecting, and adjudicating MSP overpayment claims of this sort without developing any uniform approach to the legal matter at the heart of this case: whether lump-sum settlements of tort

40

claims under the law of New Jersey include funds subject to MSP
reimbursement.  This is an issue of law and, as such, it would be
more efficient to have a definitive interpretation of it, rather
than a case-by-case hardship waiver or appeal process.
Nevertheless, the Court is confident that the agency, now alerted
to the vastness of this problem through the institution of this
action, can and will address the matter on an agency-wide basis
without the Court waiving exhaustion for those claims.  If this
Court's confidence is misplaced, Plaintiffs may seek leave to
revive this aspect of their due process claim.

   The substantive issue at the heart of this case is whether
the interaction of New Jersey's tort law with the MSP statute
forbids CMS from making claims on personal injury settlements in
New Jersey.  In some instances, the agency has acknowledged,
through granting waiver to some plaintiffs in this case, that the
MSP statute does not provide CMS with a viable option for making
claims on such New Jersey funds.  Yet, CMS expends resources
making such claims and then litigating them, on a case-by-case
basis, because there has as yet been no uniform resolution of the
issue.  Thus, efficiency may weigh in favor of nonexhaustion.

   Nevertheless, moving to the third policy interest underlying
exhaustion, requiring claims to proceed through the agency would,
it seems, provide the agency with some opportunity to correct its

"errors," because, as noted above, full exhaustion has yielded consistent positive results for Plaintiffs Burke and Frick.

Fourth, Defendants' expertise may help resolve this matter on a class-wide basis, if they take a hard look at the issue. Medicare creates a complex statutory and regulatory scheme which, it seems, has collided with New Jersey state law in a perplexing manner. In many such instances, it appears that CMS is attempting to recover medical care payments from New Jersey tort victims who, by state law, could not recover such expenses from the tortfeasors. The Court is inclined to permit the agency to bring its expertise to bear in dealing with Plaintiffs who sue and recover in New Jersey, as choice of law issues, limits of recovery, proof of the purposes of the settlement payments, and other complex matters may also affect the propriety of any so-called overpayment claims in atypical situations.

Fifth, the Court has a complete record for review with regard to only Burke and Frick, who actually succeeded before the agency. With regard to the other Plaintiffs, there is some record because of the presentment of their claims, the agency's attempts to collect the so-called debts, and Plaintiffs' resistance. Nevertheless, the Court is inclined not to waive exhaustion because full exhaustion may yield the results that these remaining Plaintiffs are seeking.

42

Thus, while some of these additional policy considerations weigh against exhaustion, the Court shall not waive exhaustion of Plaintiffs' claims because they are truly claims for benefits for which full hearings and relief can be afforded by CMS without resort to judicial action.  On balance, the Court finds not only that the claims are intertwined with claims for benefits and can likely be remedied by the agency, but also that "[t]he purposes of exhaustion would . . be served by requiring these class members to exhaust administrative remedies." Bowen v. New York, 476 U.S. at 485.

**D.  Whether Burke's & Frick's Claims are Moot**

Plaintiffs Burke and Frick have fully exhausted their administrative remedies with CMS.  Such Plaintiffs are not barred by 42 U.S.C. § 405(g), 42 U.S.C. § 1395ii or 42 U.S.C. § 405(h) from seeking review of the agency's final determinations in this Court.  Nevertheless, Defendants argue that Plaintiffs have received all the benefits to which they are entitled and that their claims are therefore moot.

Article III of the U.S. Constitution limits this Court's jurisdiction to "cases" and "controversies" in which the parties have a personal stake. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980).  Because Plaintiffs Frick and Burke no longer have any stake in the claims at issue in this case and because there is no basis for fearing that this ordeal will be

43

repeated as to them, the claims by Frick and Burke are moot and the Court shall dismiss them.

**V.    CONCLUSION**

Because the claims in the Complaint arise under Medicare, and CMS has procedures available for adjudicating them, 28 U.S.C. § 405(h) bars this Court from exercising federal question jurisdiction under 28 U.S.C. § 1331.

Further, while this Court could waive full exhaustion normally required by 42 U.S.C. § 405(g), for the claims of Plaintiffs Merrifield, Oberlander and Heiser, it shall decline to do so as policy considerations weigh in favor of requiring full exhaustion.  Because Plaintiff Kiziukiewicz failed to present her dispute to the agency, the Court lacks subject matter jurisdiction over her claims pursuant 42 U.S.C. § 405(g) and could not waive exhaustion for her claims even if it were inclined to do so.

Finally, because Plaintiffs Burke and Frick have fully exhausted their administrative remedies and have succeeded, their claims in this action are moot.  An appropriate Order shall be entered.


**March 31, 2008**                               **s/ Jerome B. Simandle**
Date                                              JEROME B. SIMANDLE
                                                  U.S. District Judge